**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION - CLEVELAND**

| | | |
|---|---|---|
| **JANE DOE NO. 1** | : | **CASE NO.** _____ |
| c/o RITTGERS RITTGERS & | : | |
| NAKAJIMA | : | |
| 12 East Warren Street | : | **JUDGE** |
| Lebanon, Ohio 45036 | : | |
| | : | |
| And | : | |
| | : | |
| **JANE DOE NO. 2** | : | |
| C/O RITTGERS RITTGERS & | : | |
| NAKAJIMA | : | |
| 12 East Warren Street | : | |
| Lebanon, Ohio 45036 | : | |
| | : | |
| And | : | |
| | : | |
| **JANE DOE NO. 3** | : | |
| C/O RITTGERS RITTGERS & | : | |
| NAKAJIMA | : | |
| 12 East Warren Street | : | |
| Lebanon, Ohio 45036 | : | |
| | : | |
| Plaintiffs, | : | **COMPLAINT; JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| vs. | : | |
| | : | |
| **SOLON CITY SCHOOL DISTRICT** | : | |
| **BOARD OF EDUCATION** | : | |
| 33800 Inwood Road | : | |
| Solon, Ohio 44139 | : | |
| | : | |
| And | : | |
| | : | |
| **ERIN SHORT** | : | |
| 33800 Inwood Road | : | |
| Solon, Ohio 44139 | : | |
| | : | |
| And | : | |
| | : | |
| | : | |
| | : | |

1

|  |  |
|---|---|
| **TERRY BROWNLOW** | : |
| **33425 Arthur Road** | : |
| **Solon, Ohio 44139** | : |
|  | : |
| **Defendants.** | : |

Now come Plaintiffs, by and through counsel, and for their Complaint state as follows:

## INTRODUCTION

1. Plaintiffs bring this action arising out of teacher-on-student sexual misconduct committed by former Solon City School District Board of Education ("Solon") teacher Edward Kline ("Kline"). Plaintiffs allege that Solon was deliberately indifferent regarding known risk of sexual harassment and abuse which Kline posed to Plaintiffs, enabling Kline commit sexual assaults against Plaintiffs as minors in,  places such as his office in the band department and during camps Solon hosted for even younger students.

## PARTIES

2. Plaintiff No. 1 is a female former student of Defendant Solon City School District Board of Education ("Solon"). Plaintiff No. 1 was born in 1994. Upon acceptance of this Complaint by the Clerk, Plaintiff No. 1 will move this Court to allow her to proceed under the pseudonym "Jane Doe No. 1," as she is the victim of childhood sexual abuse and publicity of her true identity will cause further unwarranted trauma to her. Plaintiff No. 1's true identity is known to Solon.

3. Plaintiff No. 2 is a female former student of Solon. Plaintiff No. 2 was born in 1997. Upon acceptance of this Complaint by the Clerk, Plaintiff No. 2 will move this Court to allow her to proceed under the pseudonym "Jane Doe No. 2," as she is the victim of childhood sexual abuse and publicity of her true identity will cause further unwarranted trauma to him. Plaintiff No. 2's true identity is known to Solon.

2

4. Plaintiff No. 3 is a female former student of Solon. Plaintiff No. 3 was born in 1995. Upon acceptance of this Complaint by the Clerk, Plaintiff No. 3 will move this Court to allow her to proceed under the pseudonym "Jane Doe No. 3," as she is the victim of childhood sexual abuse and publicity of her true identity will cause further unwarranted trauma to him. Plaintiff No. 3's true identity is known to Solon.

5. Collectively, Plaintiff No.1, Plaintiff No. 2, and Plaintiff No. 3 will be referred to hereinafter as "Plaintiffs."

6. Solon is a political subdivision of the State of Ohio which operates a public middle school and high school in Cuyahoga County, Ohio.

7. Erin Short ("Short") is an individual who, at all times relevant to this Complaint, was employed by Solon in a role in which she had responsibility and oversight over Solon staff, including Kline, with the authority to investigate, discipline, and/or deter Kline's unlawful behavior, but failed to do so.

8. Terry Brownlow ("Brownlow") is an individual who, at all times relevant to this Complaint, was employed by Solon in a role in which she had responsibility and oversight over Solon staff, including Kline, with the authority to investigate, discipline, and/or deter Kline's unlawful behavior, but failed to do so.

**JURISDICTION AND VENUE**

9. Plaintiffs incorporate their previous allegations as if fully rewritten herein.

10. This Court has jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331 and over the state claims pursuant to 28 U.S.C. § 1367(a).

11. Venue in this Court is appropriate as the actions giving rise to Plaintiff's claims occurred in Cuyahoga County, Ohio, within this district.


**FACTS**

12. Plaintiffs incorporate their previous allegations as if fully rewritten herein.

13. In 2004, Solon hired Kline to work as a band/music instructor.

14. In his role, Kline worked with students from 8th grade through high school who had an interest in band and music.

15. Beginning as early as 2005, Kline developed a classroom environment where he was openly favoring, and even going so far as to openly flirt with, young girls.

16. Specifically, a daily routine existed where girls would come into his office to talk about their problems, await a compliment about their appearance or clothing, and then continue to hang out with him.

17. Within the band department, Kline also developed an environment in which only female students would be awarded leadership positions.

18. One teacher, in fact, heard a student note that it did not matter who ran in the upcoming band elections because Kline "will just put a girl in that position anyway."

19. The leadership opportunities were most often provided to those female students who wore skirts.

20. At some point during the 2005 school year, Kline called a student into his office and asked her to assist with making copies.

21. On the day in question, the student was wearing a pink corduroy skirt and knee-high boots.

22. When the student came in the office, Kline pulled a chair directly behind her and sat in it while the student was making copies.

23. The student reported feeling very uncomfortable about how close Kline was to her, and when she turned around, she discovered that Kline had in his hands a silver French horn which he was utilizing as a mirror to look up her skirt.

24. The student bravely reported this encounter to Anne Morgan, a Solon school official tasked with overseeing the well-being of the students in her role as a guidance counselor.

25. Morgan declined to report the incident or seek to address or even investigate the student's concerns, insisting that an allegation like that could destroy Kline's career.

26. In fact, Morgan told the student that she "was not going to listen to her."

27. Thus, despite actual knowledge by a Solon school official that Kline was looking up the skirt of a female student, Solon failed to take any action to investigate, let alone stop, discipline, or deter Kline from engaging in such behavior.

28. As Kline's career continued within Solon, he quickly developed a reputation amongst the students as being "creepy," "odd," and "inappropriate."

29. During one orchestra trip to Florida in or around 2005, Kline told a fellow teacher, after seeing young girls, including Solon students in bikinis, that "he really hope[d] they didn't go to our school."

30. Kline's behavior and conduct were so well-known that upper class female students routinely warned younger students to be aware of Kline.

31. In or around 2013 or 2014, Solon, by and through Brownlow who at the time was the high school vice principal, received yet another specific complaint about Kline from a Solon student.

32. This student, a male, in response to a conversation about the 2014 Ohio State Band sexual harassment/hazing scandal, told Brownlow that those types of things were happening at Solon.

33. When she heard this information, Vice Principal Brownlow immediately brushed it off as people not finding Kline's "wit to be funny."

34. The student, however, quickly responded that it had nothing to do with his humor but was instead much more serious.

35. This same student then cited specific examples where female students in leggings would have to do playing tests facing away from Kline, Kline would offer his office as a changing room for girls, and general discomfort in the band with girls interacting with Kline.

36. Thus, despite actual knowledge of these additional specific examples and complaints concerning Kline's behavior towards female students, Brownlow and Solon failed to take any action to investigate, let alone stop, discipline, or deter Kline from engaging in such behavior.

37. Former students similarly describe an environment in which Kline would rub against them with an erect penis, would require them to look away from him while they were practicing an instrument, and would ask only female students in skirts to help him make copies in his office while they were alone.

38. Plaintiff No. 1 was a Solon student from 2007 to 2013.

39. In or around Plaintiff No. 1's 8th grade year, Kline began to stick his hands under skirts she was wearing and would touch her inappropriately.

40. Kline would ritualistically engage in this behavior most often when Plaintiff No. 1 wore a dress to school.

41. Specifically, Kline would ask her to help make copies of new music and Kline would write a pass for her to skip an entire class to do this and he would then have an excuse to come into the small copy room and sit directly behind her with his face at the level of her buttocks.

42. Kline would be gossiping and talking constantly so Plaintiff No. 1 was as distracted as possible.

43. When it was about 5-10 minutes before she needed to leave, Kline would find a reason to have her reach over the copier and when she did so, he would stick his hand under her skirt or dress.

44. Plaintiff No. 1 estimates that this happened over 20 times through her graduation at Solon and even occurred at the Top 15 Student Dinner in front of school administrators and school officials despite Solon having been on notice about Kline as early as 2005 and again in 2013/2014.

45. Plaintiff No. 1 believed her position within the band was dependent upon her acquiescing to Kline's behavior.

46. Plaintiff No. 1 was also able to routinely leave classes and/or get excused from classes by written notes authored by Kline during his free period in order to perpetuate his abuse.

47. Prior to Plaintiff No. 1's enrollment at Solon High School, Short created an environment within Solon where students were allowed to wander the halls freely and frequently leave class.

48. Kline was thus able to engage in these activities described herein because of the environment implemented by Short as she was failing to properly investigate claims brought by students about Kline.

49. Notwithstanding the prior notice about Kline, Plaintiff No. 1 also reported Kline to Solon in 2015 by leaving a lengthy message on the Solon Safe School Helpline. Within her message, Plaintiff No. 1 described Kline's conduct and provided the names of current students to whom he may have been engaging in inappropriate and sexually harassing behavior towards.

50. At least one Solon administrator, Short, received the message and failed to conduct any investigation into Kline because Plaintiff No. 1 was unwilling to divulge her identity for fear of retaliation by Kline and others within the Solon district.

51. Notwithstanding the actual knowledge possessed by Solon in 2005, 2013/2014, and 2015, nothing substantively was done after any of the reports about Kline and he was able to continue engaging in inappropriate conduct towards female students within Solon without any discipline or deterrence for such ongoing harassment.

52. Notwithstanding this, Plaintiff No. 1 again reported Kline in 2018.

53. When she walked into the Solon administrative offices to speak with Short, a printout of her 2015 message on the Helpline was on the table and Plaintiff No. 1 confirmed that it was her who left the message.

54. Due to the sexual assault and sexual harassment she experienced, Plaintiff No. 1 suffered an extremely hostile educational environment at Solon.

55. Plaintiff No. 2 was a Solon student from 2009 to 2015.

56. She recalls that Kline frequently commented on the clothing of her and her female classmates when she was in 7th and 8th grade.

57. She also recalls that everyone within the Solon school referred to Kline as "creepy" and that he would often have female students in his office in the band department, but not male ones.

58. While Plaintiff No. 2 was in 8th grade, Kline asked her to stay after class because he claimed her clarinet, which was one of 15 being played in the room that day all at the same time, "sounded out of tune."

59. Plaintiff No. 2 recalls that she was wearing a skirt that day and while Kline was to the right of her in his office, he placed his hands underneath Plaintiff No. 2's skirt and groped her thighs and buttocks.

60. Due to the sexual assault and sexual harassment she experienced, Plaintiff No. 2 suffered an extremely hostile educational environment at Solon.

61. Plaintiff No. 3 was a Solon student from 2007 to 2013.

62. Throughout Plaintiff No. 3's time as a Solon student, she noticed that Kline gave preferential treatment to many female students and that these students were getting leadership roles which she desired.

63. Plaintiff No. 3 notes that Kline seized on her eagerness to earn a leadership role within the band and soon began to ask her to come into his office to, *inter alia*, make copies and stand on ladders to grab things for him.

64. In doing so, Kline would routinely find ways to grab her things or brush closely against her such that his crouch would touch her buttocks.

65. After graduation, Kline also invited Plaintiff No. 3 to serve as an instructor for Solon's band camp.

66. During this camp, while performing services for Solon, Kline grabbed Plaintiff No. 3's breasts and crotch, told her he wanted her to wear dresses, and also informed her that he would routinely masturbate during the camp.

9

67. During this camp, Kline also admitted to Plaintiff No. 3 that the Solon Principal had told him that "after [Kline] got caught doing something, [Kline] was told he needed to keep his office door open."

68. Due to the sexual assault and sexual harassment she experienced, Plaintiff No. 3 suffered an extremely hostile educational environment at Solon.

69. Upon information and belief, at other various other points prior to Kline's resignation from Solon in 2018, a significant number of other students reported Kline's inappropriate behavior to Solon school officials who failed to take any meaningful corrective action thus enabling Kline to abuse countless other students beyond Plaintiffs.

**FIRST CAUSE OF ACTION**
(Title IX, 20 U.S.C. § 1681, *et seq.* - Solon)

70. Title IX of the Education Amendments of 1972 requires that "No person… shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

71. As a political subdivision, Solon accepted Federal financial assistance at all times relevant to this Complaint and was obligated to comply with Title IX.

72. Solon was responsible for providing education to minor students, including Plaintiff, through (a) oversight and supervision of all school functions, school property, and student programs; and (b) the hiring, supervision, management, assignment, control, and regulation of individuals who serve as staff members, including but not limited to teachers like Kline.

73. Solon was also responsible for all policies and procedures within its middle school and high school where Kline worked. This charge and responsibility includes the supervision and discipline of teachers and administrators including, but not limited to, Kline.

74. From 2005 through 2018, Solon, by and through appropriate officials, including but not limited to Short and Brownlow, received actual notice that Kline had sexually harassed and assaulted and/or sexually harassed multiple minor students within the district.

75. Kline's sexual harassment and assaults of minor students was severe, pervasive, and objectively offensive.

76. Appropriate Solon officials, including but not limited to Anne Morgan, Brownlow, and Short, had actual knowledge of Kline's actions.

77. From 2007 and 2013, Kline's sexual harassment and assaults of Plaintiffs was severe, pervasive, and objectively offensive.

78. As a teacher within the district, Solon, Short, and Brownlow had substantial control over Kline as its employee.

79. Solon, Short, and Brownlow had control over the context of Kline's sexual harassment and assaults of minor students, including Plaintiffs, which occurred during school hours and on school grounds while in the scope of his teaching obligations.

80. Solon demonstrated an official policy and/or practice of deliberate indifference towards actual notice that Kline was a sexual predator targeting minor students in its care, such that it:

    a. failed to investigate or resolve reports that Kline had sexually abused minor students prior to Plaintiff's time as students;

    b. allowed Kline to continue teaching minor students despite ongoing reports of sexual harassment and assault, such that he became Plaintiff's teacher;

  c. failed to investigate ongoing sexual harassment accusations against Kline before he sexually assaulted or harassed Plaintiffs despite its actual knowledge of the risk of sexual harm Kline posed to minor students on campus.

81. As a direct and natural consequence of Solon's actions, inactions, and overall deliberate indifference to, and violation of, Plaintiffs' clearly established rights, the minors suffered and continued to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification.

82. As a direct and proximate result of Solon's deliberate indifference and intentional discrimination, by and through its agents and employees, Plaintiffs sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

  a. Past, present, and future physical and psychological pain, suffering, and impairment;

  b. Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

  c. Loss of educational access and opportunity;

  d. Past, present, and future economic losses, including lost wages;

  e. Attorneys' fees and costs; and

  f. Such other and further relief that this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 CLAIM OF FOURTEENTH AMENDMENT VIOLATION - Solon)**

83. Plaintiffs incorporate all allegations listed above herein.

84. Solon is a "person" within the meaning of 42 U.S.C. § 1983.

85. At all relevant times, Solon was acting under the color of state law.

86. Plaintiffs have well-established substantive rights to personal security and bodily integrity, including the right to be free as a minor student from sexual abuse at the hands of a public-school teacher under the Fourteenth Amendment to the U.S. Constitution.

87. Plaintiffs also have a well-established right to Equal Protection under the Fourteenth Amendment, which prohibits Solon from differential treatment of them based on sex.

88. Plaintiffs also have a well-established right to equal access to education under Title IX based upon 50 years of case law and guidance from the U.S. Department of Education to federal funding recipients, such as Solon.

89. Solon is liable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights under the Fourteenth Amendment and her federal rights under Title IX in the following ways:

   a. tacit approval or ratification of the constitutional violations committed by its officials who effectively "swept" systemic child sexual abuse "under the rug" by ignoring such abuse, keeping him in the classroom with minors, and discriminating against Plaintiffs as one of the victims;

   b. failure to train its officials on how to properly identify child sex abuse, investigate the same under Title IX, and intervene to prevent such ongoing abuse;

   c. failure to supervise Kline such that he did not have the opportunity to abuse minors students while a teacher for Solon; and

   d. its custom of affirmatively condoning teacher-on-student sexual harassment and abuse by failing to act on repeat reports of the same.

90. As a direct and natural consequence of these actions and omissions, and overall deliberate indifference toward Plaintiffs' clearly established constitutional and federal rights by

13

Solon, Plaintiffs suffered and continue to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification.

91. As a direct and proximate result of the deliberate indifference by Defendant Board, Plaintiffs sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering, and impairment;

    b. Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

    c. Loss of educational access and opportunity;

    d. Past, present, and future economic losses, including lost wages

    e. Attorneys' fees and costs; and

    f. Such other and further relief that this Court deems just and proper.

## THIRD CAUSE OF ACTION
**(Malicious, bad faith, and/or wanton or reckless conduct – Short)**

92. Plaintiffs incorporate their previous allegations as if fully rewritten herein.

93. The actions of Short described herein were done with malicious purpose, in bad faith, and/or in a wanton or reckless manner.

94. As a direct and proximate result of Short's malicious, bad faith, and/or wanton or reckless actions, Plaintiffs sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering, and impairment;

b. Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c. Loss of educational access and opportunity;

d. Past, present, and future economic losses, including lost wages

e. Attorneys' fees and costs; and

f. Such other and further relief that this Court deems just and proper.

## FOURT CAUSE OF ACTION
### (Malicious, bad faith, and/or wanton or reckless conduct – Brownlow)

95. Plaintiffs incorporate their previous allegations as if fully rewritten herein.

96. The actions of Brownlow described herein were done with malicious purpose, in bad faith, and/or in a wanton or reckless manner.

97. As a direct and proximate result of Brownlow's malicious, bad faith, and/or wanton or reckless actions, Plaintiffs sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

a. Past, present, and future physical and psychological pain, suffering, and impairment;

b. Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c. Loss of educational access and opportunity;

d. Past, present, and future economic losses, including lost wages

e. Attorneys' fees and costs; and

f. Such other and further relief that this Court deems just and proper

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for compensatory damages in an amount to be determined by the jury well in excess of $75,000.00, punitive damages, attorney fees, costs and all other relief to which they may be entitled.

        Respectfully submitted,

        /s/ Ryan J. McGraw

        Konrad Kircher (0059249)
        RITTGERS RITTGERS & NAKAJIMA
        12 E. Warren St.
        Lebanon, Ohio 45036
        (513) 932-2115
        (513) 934-2201 Facsimile
        konrad@rittgers.com

        Ryan J. McGraw
        RITTGERS RITTGERS & NAKAJIMA
        3734 Eastern Avenue
        Cincinnati, Ohio 45226
        (513) 932-2115
        (513) 934-2201 Facsimile
        ryan@rittgers.com
        *Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff demands trial by a jury on all issues so triable.

        /s/ Ryan J. McGraw
        Ryan J. McGraw (0089436)