STATE OF MINNESOTA          DISTRICT COURT

COUNTY OF ANOKA          TENTH JUDICIAL DISTRICT

Case Type: Personal Injury

---

Doe 600,

         Plaintiff,

v.

Circle R Ranch,

         Defendant.

Court File No.: 02-CV-20-2671
Honorable Jonathan N. Jasper

**AFFIDAVIT OF SUSAN PHIPPS-YONAS, PH.D., L.P.**

---

STATE OF INDIANA    )
                              ) ss.
COUNTY OF MARION )

Susan Phipps-Yonas, Ph.D., LP, being first duly sworn, deposes and states as follows:

1. I make this Affidavit in support of Plaintiff's request to proceed in her sexual abuse related civil action using a pseudonym, in order to preserve anonymity related to public court filings.

**Qualifications:**

2. I have been a licensed psychologist in Minnesota since December 1981. I also became a licensed psychologist in Arizona in January 2017.

3. I earned my doctorate in clinical psychology from the University of Minnesota in 1978, having completed both the child and adult tracks of study.

4. After I began a therapy practice in 1982, I often worked with children, adolescents, and adults who were victims of childhood sexual abuse, and I developed skills in the area of forensic evaluation of such clients, including adult males who had been abused by Roman Catholic priests.

5.  In 1988, I first taught a graduate seminar on the topic of sexual abuse at the Institute of Child Development at the University of Minnesota, where I continued to teach similar classes over a period of six years.

6.  I conduct speaking engagements and presentations, as an expert in psychology and childhood sexual abuse, at conferences in the United States and internationally, including, most recently, in Colombia and Brazil.

7.  I have written and co-written several articles published in peer-reviewed journals on psychology, sexual abuse, and sexuality,[1] and I have been retained as a consulting expert in a number of criminal and civil matters involving sexual abuse and childhood sexual abuse. For example, the Minnesota Bureau of Criminal Apprehension and Scott County retained me to evaluate the veracity of multiple child-victims in a wide-ranging criminal investigation.[2]

8.  Over the past three decades, I have conducted more than one hundred evaluations of adults who were sexually abused as children, most typically by Catholic clergy, and I have continued to read all of the professional journals and books available to ensure that I am aware of the research relevant to such work.

---

[1] Some examples of my work are: Susan Phipps-Yonas, *Sexual Trauma and Psychological Injuries: What Experts Need to Know*, 5 PSYCHOLOGICAL INJURY LAW, 12–36 (2012); Susan Phipps-Yonas, *Teenage Pregnancy and Motherhood: A Review of the Literature*, 50 AMERICAN JOURNAL OF ORTHOPSYCHIATRY, 403-431 (1980); Mannheim, Carole I., Sancilio, Michael, Phipps-Yonas, *et al.*, *Ethical Ambiguities in the Practice of Child Clinical Psychology*, 33(1), 24-29 (2002).

[2] N.Y. Times Archives, *Minnesota To Take Over Child Abuse Investigation*, N.Y. Times, Oct. 19, 1984, at A13, *available at* https://www.nytimes.com/1984/10/19/us/minnesota-to-take-over-child-abuse-investigation.html.

2

Filed in District Court
State of Minnesota
7/27/2020 4:54 PM

**Opinion:**

9. It is my opinion, to a reasonable degree of psychological certainty, that forcing victims/survivors of childhood sexual abuse to reveal their identities in public court filings will cause multiple negative psychological consequences for them. Publicly revealing victims' identities against their wishes will likely exacerbate any preexisting psychiatric problems, and will likely foster new symptoms, thereby compromising their mental and physical health, as well as their relationships, both primary and secondary.

10. The above opinions are generally accepted in the psychological community and are supported by a multitude of peer-reviewed literature, as further explained below.

11. Numerous psychological studies have demonstrated that being sexually abused as a child often results in the development of Posttraumatic Stress Disorder (PTSD) and stigmatization for victims,[3] with symptoms that may emerge in the immediate aftermath of the abuse or may emerge much later on.[4]

---

[3] *See, e.g.,* Finkelhor, D., & Browne, A., *The Traumatic Impact of Child Sexual Abuse: A conceptualization*, 55(4) AMERICAN JOURNAL OF ORTHOPSYCHIATRY, 530-541. (1985). This seminal article outlines four factors ingrained in a sexual abuse victim, which can cause trauma to a child and are ongoing issues. 1. Traumatic sexualization; 2. Betrayal; 3. Powerlessness; 4. Stigmatization.

[4] *Id.; see also* Oral, *et al.*, *Adverse Childhood Experiences and Trauma Informed Care: the Allure of Health Care*, 79 PEDIATRIC RESEARCH, 227-233 (2016); Raja, *et al.*, *Trauma Informed Care in Medicine: Current Knowledge and Future Research Directions*, 38(3) FAMILY COMMUNITY HEALTH, 216-26 (2015); U.S. Dep't of Health and Human Services, Substance Abuse and Mental Health Services Administration, *SAMHSA's Concept of Trauma and Guidance for a Trauma-Informed Approach* (July 2014).

Empirical studies support that even when victims/survivors do not meet all of the criteria for PTSD, they are much more likely than their non-abused peers to suffer myriad psychiatric, behavioral, psychosocial, and physical health problems. *See, e.g.,* Susan Phipps-Yonas, *Sexual Trauma and Psychological Injuries: What Experts Need to Know*, 5 PSYCHOLOGICAL INJURY LAW, 12–36 (2012).

12. A victim's feelings of shame and stigmatization[5] can be a stronger predictor of ongoing trauma and depression than even the severity of the abuse itself.[6]

13. Publication of a victim's name and abuse history, without the victim's consent, will likely *increase* the victim's feelings of shame and stigmatization.[7]

14. There is a strong association between PTSD and mental defeat involving negative beliefs about the self and a lack of control over one's life.[8]

15. An abuse victim/survivor who was publicly anonymous, and who, now, against their will, is publicly outed as a victim of sexual abuse, will likely experience renewed feelings of loss of control, hopelessness, and stigmatization (even if these feelings were previously resolved or moderated through therapy).[9]

---

[5] The concept of "stigmatization" is defined as, internal feeling of badness, shame, and guilt. Stigmatization, in particular, has been identified as a key dynamic in explaining the link between sexual abuse victimization and negative emotional and social consequences for victims. *See* Finkelhor & Brown, *supra*, at note 3.

[6] Feiring, C., Taska, L., & Chen, K., *Trying to understand why horrible things happen: Attribution, shame, and symptom development following sexual abuse*, 7(1) CHILD MALTREATMENT 25-39 (2002); *see also* Oral, *et al.*, *Adverse Childhood Experiences and Trauma Informed Care: the Allure of Health Care*, 79 PEDIATRIC RESEARCH, 227-233 (2016).

[7] *See, e.g.*, Jones, L., Finkelhor, D., & Beckwith, J., *Protecting Victims' Identities in Press Coverage of Child Victimization*, 11(3) JOURNALISM, 347-367 (2010).

[8] Jessica Bernardi & Laura Jobson, *Investigating the Moderating Role of Culture on the Relationship Between Appraisals and Symptoms of Posttraumatic Stress Disorder*, 7 CLINICAL PSYCHOLOGICAL SCIENCE, 1000-13 (2019).

[9] *See* Jessica Bernardi & Laura Jobson, *Investigating the Moderating Role of Culture on the Relationship Between Appraisals and Symptoms of Posttraumatic Stress Disorder*, 7 CLINICAL PSYCHOLOGICAL SCIENCE, 1000-13 (2019); Amy R. Stewart, et al., *Positive Affect as a Buffer Between Chronic Stress and Symptom Severity of Emotional Disorders*, 7 CLINICAL PSYCHOLOGICAL SCIENCE, 914-927 (2019).

16. The above psychological facts are why social scientists, courts, and legal journals all recognize the necessity for public anonymity of sexual assault victims seeking civil or criminal redress.[10]

**Conclusion:**

17. In summary, when victims/survivors of childhood sexual abuse take legal action, it is critical that they are not re-victimized during that process. The stigmatization these victims feel, specifically, the long-held fear that their loved ones, friends, neighbors, and/or co-workers may now see them differently, in light of their history of sexual abuse, becomes closer to a reality when they file a lawsuit. One way to protect them from re-victimization and unnecessary additional psychological harm is to shield their identity from public disclosure.

18. This is my opinion to a reasonable degree of psychological certainty that is generally accepted within the field of psychology and the scientific community.

Dated: 07/21/20

Susan Phipps-Yonas, Ph.D., L.P.

Subscribed and sworn before me this 21 day of July, 2020

Notary Public

ROBIN C. CLAY
Notary Public, State of Indiana
Marion County
Commission # 656906
My Commission Expires
August 14, 2022

---

[10] *See, e.g.,* Garvin, *et al., Protecting Victims' Privacy Rights: The Use of Pseudonyms in Civil Law Suits,* NATIONAL CRIME VICTIM LAW INSTITUTE AT LEWIS & CLARK LAW SCHOOL, July Bulletin, 2011 (citing Dean J. Kilpatrick & Randy K. Otto, *Constitutionally Guaranteed Participation in Criminal Proceedings for Victims: Potential Effects on Psychological Functioning,* 34 Wayne L. Rev. 7, 25 (1987) (describing victims' further victimization by the justice system) *also citing, Commonwealth ex rel. Platt v. Platt,* 404 A.2d 410, 429 (Pa. Super Ct. 1979); *also citing, Doe v. Firm,* No. CV065001087S, 2006 WL 2847885, at *5 (Conn. Super. Ct. Sept. 22, 2006) ("[t]o force the plaintiff to proceed without the protection of the pseudonym Jane Doe could only subject the plaintiff to additional psychological harm and emotional distress.")).