IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE NO. 1, et al., | ) | CASE NO.: 1:23-CV-01607 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| SOLON CITY SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
(MEMORANDUM IN SUPPORT INCORPORATED HEREIN)

---

Defendants Solon City School District Board of Education ("Board" or "District"), Terry Brownlow, and Erin Short ("Administrators") move this Court for judgment on the pleadings in their favor, pursuant to Fed. R. Civ. P. 12(c).  As set forth in the attached Memorandum in Support, the Complaint fails to state a claim upon which relief can be granted against Defendants.

Respectfully Submitted,

*/s/Kathryn Perrico*
Kathryn I. Perrico (Reg. No. 0076565)
    E-mail: kperrico@westonhurd.com
    Direct Dial: 216-687-3374
Maria Fair (Reg. No. 0087745)
    Email: mfair@westonhurd.com
    Direct Dial: 216-687-3366
Sara Ravas Cooper (Reg. No. 0076543)
    Email: scooper@westonhurd.com
    Direct Dial: 216-687-3364
**WESTON HURD LLP**
1300 East Ninth Street, Suite 1400
Cleveland, Ohio  44114
216-241-6602 / Fax: 216-621-8369
*Attorneys for Defendants*

{02346322 -4}

## **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................. iii

Memorandum in Support ..........................................................................................1

    I.      Summary of Argument and Brief Statement of the Issues to be Decided .......................1

    II.    Alleged Operative Facts ........................................................................................2

    III.   Law and Argument ...............................................................................................5

    IV.   Conclusion ...........................................................................................................20

Certificate of Compliance ........................................................................................21

Certificate of Service ................................................................................................21

## TABLE OF AUTHORITIES CITED

**Page**

Adams v. Ohio Univ., 300 F. Supp. 3d 983, 996 (S.D. Ohio 2018)................................9

Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010)....................................................5

Anderson v. City of Massillon, 2012-Ohio-5711, ¶ 33, 134 Ohio St. 3d 380, 388, 983 N.E.2d 266, 273.....................................................................................................................18

Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009) ..............................5

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) ............................5

Benefield v. Bd. of Trs. of the Univ. of Ala. at Birmingham, 214 F. Supp. 2d 1212, 1219 (N.D. Ala. 2002) ..................................................................................................................16

Bickerstaff v. Lucarelli, No. 1:14CV831, 2015 U.S. Dist. LEXIS 43603, at *12 (N.D. Ohio Apr. 2, 2015) ..............................................................................................................18

Bishop v. Lucent Techs., Inc., 520 F.3d 516, 520 (6th Cir. 2008) ...................................6

Bradley v. City of Cleveland, No. 1:11CV781, 2012 U.S. Dist. LEXIS 30714, at *9 (N.D. Ohio Mar. 7, 2012)......................................................................................................18

Campbell v. Dundee Cmty. Sch., 661 F. App'x 884, 888 (6th Cir. 2016) .............................10, 11

Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996) ....................................................6

Commer. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007)....................5

Craighead v. E.F. Hutton & Co., 899 F.2d 485, 491 (6th Cir. 1990) ................................5

D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) ....................................13, 16

Doe v. Claiborne Cty., 103 F.3d 495, 507 (6th Cir. 1996) ...........................................13

Doe v. Cuyahoga Cty. Cmty. Coll., No. 1:22CV1287, 2023 U.S. Dist. LEXIS 35472, at *14 (N.D. Ohio Feb. 10, 2023)........................................................................................10

Doe v. Metro. Gov't & Davidson Cty., 35 F.4th 459, 465 (6th Cir. 2022)..............................11, 12

Doe v. Ohio State Univ., 323 F. Supp. 3d 962, 968 (S.D. Ohio 2018)..............................9

Doe v. Ohio Univ., No. 2:21-cv-858, 2022 U.S. Dist. LEXIS 54992, at *19 (S.D. Ohio Mar. 28, 2022) ...........................................................................................................................8

iii

Doe v. St. Edward High Sch., No. 22-cv-440, 2022 U.S. Dist. LEXIS 143920, at *5 (N.D. Ohio Aug. 11, 2022.) ............................................................................................................6

Doe v. Univ. of Ky., 959 F.3d 246, 251 n.3 (6th Cir. 2020) ..........................................................7

Erie Cty., Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012) ......................................5

Evans v. Iceman, No. 2:21-cv-05213, 2022 U.S. Dist. LEXIS 133151, at *12 (S.D. Ohio July 26, 2022) ...........................................................................................................................15

Fudge v. Watson, No. 4:12CV2428, 2013 U.S. Dist. LEXIS 16835, at *10 (N.D. Ohio Feb. 7, 2013) ........................................................................................................................6, 7

Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S. Ct. 1989, 1999 (1998) ............. ......................................................................................................................................7, 9, 13

Gischel v. Univ. of Cincinnati, No. 1:17-cv-475, 2018 U.S. Dist. LEXIS 230848, at *19 (S.D. Ohio Jan. 23, 2018) ...........................................................................................................9

Herman v. Ohio Univ., No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 202813, at *12 (S.D. Ohio Nov. 22, 2019) ............................................................................................................................9

Hoover v. Langston Equip. Assocs., 958 F.2d 742, 745 (6th Cir. 1992) .......................................6

Joyce v. Wright State Univ., No. 3:17-cv-387, 2018 U.S. Dist. LEXIS 100780, at *26 (S.D. Ohio June 15, 2018) ....................................................................................................................9

Karasek v. Regents of the Univ. of Cal., 956 F.3d 1093, 1112 (9th Cir. 2020) ...............11, 12, 13

KD v. Douglas Cty. Sch. Dist., No. 8:17CV285, 2019 U.S. Dist. LEXIS 190377, at *25 (D. Neb. Nov. 1, 2019) ...................................................................................................................16

Kesterson v. Kent State Univ., 967 F.3d 519, 528 (6th Cir. 2020) ...............................................10

Kiekisz v. Cuyahoga Cty. Bd. of Comm'rs, No. 1:21-cv-00264, 2021 U.S. Dist. LEXIS 215979, at *28 (N.D. Ohio Nov. 9, 2021) ......................................................................................18

Klemencic v. Ohio State Univ., 263 F.3d 504, 510 (6th Cir. 2001) ...............................................8

Kollaritsch v. Mich. State Univ. Bd. of Trs., 944 F.3d 613, 625 (6th Cir. 2019) .........................12

Lewis v. ACB Bus. Servs., 135 F.3d 389, 405 (6th Cir. 1998) .......................................................5

M.J. v. Akron City Sch. Dist. Bd. of Educ.,2020 U.S. Dist. LEXIS 74270, at *47 (N.D. Ohio Apr. 28, 2020) ..................................................................................................................14

iv

McPherson v. Cuyahoga Cty., 2021 U.S. Dist. LEXIS 126802, at *25 (N.D. Ohio July 8, 2021) ................................................................................................................................15

Miller v. Sanilac Cty., 606 F.3d 240, 255 (6th Cir. 2010) ............................................................16

Mohat v. Mentor Exempted Vill. Sch. Dist. Bd. of Educ., No. 1:09 CV 688, 2011 U.S. Dist. LEXIS 58319, at *22 (N.D. Ohio May 31, 2011).........................................................................14

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978) ........................13

Myers v. Boardman Local Sch. Dist. Bd. of Educ., No. 4:21-cv-2048, 2022 U.S. Dist. LEXIS 213917, at *13 (N.D. Ohio Nov. 28, 2022) ............................................................................14, 16

Noble v. Branch Intermediate Sch. Dist., No. 4:01cv 58, 2002 U.S. Dist. LEXIS 19600, at *49 (W.D. Mich. Oct. 9, 2002)..............................................................................................................9

Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300 (1986)......................14

Preston v. Murty, 32 Ohio St. 3d 334, 335, 512 N.E.2d 1174, 1175 (1987) ................................19

Reid v. Baker, 499 F. App'x 520, 524 (6th Cir. 2012)...................................................................6

Runser v. City of Dayton, No. 3:21-cv-00160, 2022 U.S. Dist. LEXIS 32263, at *10 (S.D. Ohio Feb. 24, 2022) ...............................................................................................................................15

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988)............................6

Shively v. Green Local Sch. Dist. Bd. of Educ., 579 F. App'x 348, 359 (6th Cir. 2014).............19

Snyder-Hill v. Ohio State Univ., 48 F.4th 686, 698 (6th Cir. 2022) ..............................................6

Spragling v. Akron Pub. Sch., No. 5:18CV1969, 2019 U.S. Dist. LEXIS 44906, at *6 (N.D. Ohio Mar. 18, 2019)................................................................................................................................7

St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988) .......................................14

Wamer v. Univ. of Toledo, 27 F.4th 461, 471 (6th Cir. 2022).......................................................8

Warren v. Reading Sch. Dist., 278 F.3d 163, 173 (3d Cir. 2002)..................................................10

**Statutes**

20 U.S.C.1681(A) ...........................................................................................................................7

Fed.R.Civ.P.12(c) ...........................................................................................................................5

O.A.C.3301-24-01(R) ....................................................................................................10

O.R.C. § 2305.10 ..........................................................................................................6

O.R.C. § 2305.16 ..........................................................................................................6

O.R.C. § 3319.11 ........................................................................................................14

O.R.C.§ 2744.03(A)(6) ...............................................................................................18

R.C.§ 2744.03 ...............................................................................................1, 18, 19

<u>**MEMORANDUM IN SUPPORT**</u>

**I.   SUMMARY OF ARGUMENT AND BRIEF STATEMENT OF ISSUES TO BE DECIDED**

As with all sexual assault claims, the allegations giving rise to this suit are truly disturbing. But blame lies only with the perpetrator, Edward Kline, a former District band director. Neither the Board nor its Administrators knew about Kline's misconduct before the assaults described in the Complaint.  Instead, as the Complaint itself admits, the details of Kline's assaults came to light years after the incidents alleged by Plaintiffs. Because Defendants could not have foreseen or prevented the alleged assaults, they cannot be liable for them and are entitled to judgement on the pleadings in their favor.

Specifically, Plaintiffs allege Kline groped them while they were in middle and high school between 2007 and 2013. Plaintiffs sue the Board and its Administrators under Title IX and Section 1983 for failing to prevent these assaults, but their claims fail for three reasons:  **First,** the two-year statute of limitations has expired for Plaintiffs' federal causes of action, even when tolled until they reached the age of majority.

**Second,** the Complaint's operative facts do not plead requisite elements of Title IX or Section 1983 liability against the Board. For example, the Complaint does not allege that an official with authority to take corrective action had actual notice of Title IX harassment until 2015 or 2018 at the earliest. This was long after the alleged groping ended. Similarly, no allegations suggest clear and persistent patterns of unconstitutional conduct, notice, tacit approval, official policy, ratification, or any other requisite elements to show Board liability under Section 1983. **Finally,** Ohio does not recognize a cause of action for reckless or wanton conduct, and the Complaint's allegations do not suffice to pierce immunity under R.C. § 2744.03.

Thus, the issues for this Court to decide are:

1.  Plaintiffs are all in their late twenties and allege harm occurring between 2007-2013. The statute of limitations for their Title IX and Section 1983 claims expired when Plaintiffs turned 20. Must judgment on the pleadings be granted to the Board as to the first and second causes of action?

2.  A Title IX claim requires plaintiffs to plead operative facts showing that an official with authority to take corrective action had actual notice of the harassment. Further, plaintiffs must plausibly aver that the school's deliberate indifference to this notice caused further discrimination. Plaintiffs do not allege that that an official with authority to discipline Kline knew of his groping before 2015. All harm Plaintiffs describe occurred before 2015. Must judgment on the pleadings be granted to the Board as to the Title IX claim?

3.  A Section 1983 claim against a school board fails absent plausible allegations that the Board knew about clear patterns of unconstitutional conduct yet tacitly approved or ratified such actions. Plaintiffs do not allege that any Board member knew about Kline's misconduct before his resignation in 2018. Must judgment on the pleadings be granted to the Board as to the Section 1983 claim?

4.  Ohio does not recognize a cause of action for malicious, bad faith, and/or wanton or reckless conduct. Must judgment on the pleadings be granted to the Administrators as to the third and fourth causes of action?

5.  Piercing immunity under Ohio law is available in only narrow circumstances, none of which are plausibly alleged here. Are Administrators immune from Plaintiffs' third and fourth causes of action?

## II.    ALLEGED OPERATIVE FACTS

### A.  Allegations about Jane Doe 1:

Born in 1994, Jane Doe 1 is 29 years old. (Complaint ("Compl.") ¶2, ECF#1, PageID 2.) She alleges Kline touched her under her skirt or dress multiple times throughout her middle and high school years. (*Id.*¶¶43-44, ECF#1,PageID7.) This was facilitated, according to the Complaint, by an environment where students were permitted to leave class and wander the halls. (*Id.* ¶47, ECF#1, PageID 7.) Jane Doe 1 graduated from Solon in 2013. (*Id.* ¶38, ECF#1, PageID 6.)

The first time Jane Doe 1 told anyone at Solon about her experience with Kline was in 2015, two years after graduation, via an anonymous message on the Solon Safe School Helpline. (Compl. ¶¶49-50, ECF#1, PageID8.) Jane Doe 1 alleges that the District failed to investigate

appropriately, because her message was anonymous; thus, she came forward again in-person in 2018.  (*Id.*, ¶¶ 50; 52, ECF#1, PageID8.) That year Kline resigned. (*Id.*, ¶69, ECF#1, PageID 10.)

Jane Doe 1 does not allege any inappropriate touching to her or any other Plaintiff by Kline after her 2015 report.

### B.  Allegations about Jane Doe 2:

Born in 1997, Jane Doe 2 is 26 years old. (Compl. ¶3,ECF#1, PageID 2.) Jane Doe 2 alleges a single incident in 8th grade where Kline groped her thighs and buttocks. (*Id.*, ¶¶ 58-59, ECF#1, PageID 9.) Jane Doe 2 graduated in 2015. (*Id.*, ¶55, ECF#1, PageID 8.) She does not describe ever reporting this assault to any Solon official, nor does Jane Doe 2 allege any incidents in high school.

### C.  Allegations about Jane Doe 3:

Jane Doe 3 was born in 1995 and is 28 years old. (Compl. ¶4, ECF#1, PageID 3.) Jane Doe 3 alleges that Kline routinely brushed against her backside while she was a Solon student. (*Id.*, ¶64, ECF#1, PageID 9.) Like Jane Doe 1, Jane Doe 3 also graduated in 2013. (*Id.*, ¶61, ECF#1, PageID 9.) The summer after graduation, she was employed as an instructor for the District's band camp. (*Id.*, ¶65, ECF#1, PageID 9.) That summer, Jane Doe 3 alleges, Kline groped her and made inappropriate remarks. (*Id.*, ¶66, ECF#1, PageID 9.) Jane Doe 3 does not describe ever reporting these assaults to any Solon official, nor does she allege any incidents after Summer of 2013.

### D.  Allegations about Notice.

The Complaint alleges four conversations with Solon employees about Kline's conduct.

- **2005 Guidance Counselor Conversation:**  In 2005, an unnamed student purportedly reported to a guidance counselor that Kline was using a musical instrument to look up her skirt earlier that day. (Compl. ¶¶23-25, ECF#1, PageID 5.) The complaint alleges that the guidance

counselor failed to report the incident or to otherwise address the unnamed student's concerns. (*Id*.)

- **2013/2014 Brownlow Conversation:** In discussing the 2014 Ohio State Marching Band scandal,[1] another unnamed student purportedly told then-Vice Principal Brownlow that Kline: (1) offered his office as a changing room for girls; (2) asked female students in leggings to play facing away from him; and (3) made band members generally uncomfortable. (Compl.¶¶ 32,35, ECF#1, PageID6.) The Complaint alleges that Brownlow failed to investigate or discipline Kline. (*Id*., ¶36.)

- **2015 Anonymous Message:** Jane Doe 1 alleges that, in 2015, she left an anonymous message on a District hotline, describing Kline's conduct and providing names of current students he may have harassed. (Compl. ¶49, ECF#1, PageID 8.) The Complaint avers that Administrator Short failed to investigate due to the anonymous nature of the message. (*Id*., ¶50.) Based on the timeline described in the Complaint, Jane Doe 1 left this message two years after she and Jane Doe 3 graduated, and either shortly before or just after Jane Doe 2 graduated in 2015. (Compl.¶¶ 38, 55, 61, ECF#1 PageID 6,8-9.)

- **2018 In-Person Report**: Jane Doe 1 alleges she met in-person with Administrator Short in 2018 to report Kline's conduct.  (Compl. ¶¶52-53, ECF#1, PageID 8.) This was the year Kline resigned.  (*Id*., ¶69, ECF#1, PageID 10.)

The Complaint also alleges that Kline had a general reputation for being creepy, odd, and inappropriate. (Compl. ¶¶ 28, 30, 57,  ECF#1, PageID 5, 8.) As explained further below,  however, neither of the two pre-2015 conversations described above notified Defendants about Kline's

---

[1]     In July of 2014, following a two-month internal investigation, Ohio State University fired the director of its marching  band.     https://www.nytimes.com/2014/07/25/us/ohio-state-fires-marching-band-director-after-finding-tradition-of-sexual-hazing.html

sexual assaults. Chronologically, and as a matter of law, the Board and its Administrators cannot be liable for pre-2015 harms that they found out about – per the Complaint's own allegations – years later.

## III.    LAW AND ARGUMENT

### A.  Standard for Judgment on the Pleadings Under Rule 12(c).

After the pleadings are closed – but early enough not to delay trial – any party may move for judgment on the pleadings. Fed.R.Civ.P.12(c). To survive a motion for judgment on the pleadings, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009). Moreover, to withstand Rule 12(c) review, a complaint must include "direct or inferential allegations respecting all the material elements under some viable legal authority." *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 491 (6th Cir. 1990).

A court should not accept legal conclusions or unwarranted factual inferences as true. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). Further, merely pleading facts consistent with a defendant's liability or permitting an inference of misconduct is insufficient. *Iqbal*, 556 U.S. at 678. Avoiding dismissal "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). A court need not – indeed, should not – accept conclusory allegations or conclusions of law dressed up as facts. *Erie Cty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). Finally, when a complaint omits facts that, if they existed, would clearly dominate the case, it is fair to assume

they are non-existent. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

Here, the Complaint itself demonstrates the untimeliness of Plaintiffs' claims.  Further, the operative facts Plaintiffs allege about their pre-2015 assaults cannot impute liability to the Board and its Administrators as a matter of chronology and law.

### B.  Plaintiffs' Claims – Per Their Own Allegations  – Are Untimely.

Plaintiffs' Title IX and Section 1983 claims arise from allegations occurring over a decade ago; the statute of limitations has run for their causes of action.  Dismissal is appropriate when on its face, a complaint indicates a failure to file within the allowable time. *Reid v. Baker*, 499 F. App'x 520, 524 (6th Cir. 2012). Moreover, without operative facts suggesting an exception to the statute of limitations, an expired claim cannot move forward. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008), citing *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992).

Both Section 1983 and Title IX claims must be brought within Ohio's two-year statute of limitations for personal injury claims, O.R.C. § 2305.10.  *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) ("Title IX thus borrows from Ohio's two-year statute of limitations for personal injury claims..."); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Causes of action for minors accrue when plaintiffs reach the age of majority. O.R.C. § 2305.16;  *See also Doe v. St. Edward High Sch.*, No. 22-cv-440, 2022 U.S. Dist. LEXIS 143920, at *5 (N.D. Ohio Aug. 11, 2022.)

But failure to file within two years of turning 18 renders such claims untimely. Specifically, Ohio federal courts dismiss – before discovery – Title IX or Section 1983 sexual assault claims when filed more than two years after plaintiffs reach majority age. *See e.g. Fudge*

*v. Watson*, No. 4:12CV2428, 2013 U.S. Dist. LEXIS 16835, at *10 (N.D. Ohio Feb. 7, 2013) (dismissing Section 1983 sexual abuse claims filed outside the statute of limitations); *Spragling v. Akron Pub. Sch.*, No. 5:18CV1969, 2019 U.S. Dist. LEXIS 44906, at *6 (N.D. Ohio Mar. 18, 2019) (dismissing Title IX sexual abuse claims filed outside the statute of limitations.)

Here, Plaintiffs reached the age of majority in 2012, 2015, and 2013 respectively. (Compl. ¶¶2-4, ECF#1, PageID 2-3.) This Complaint, filed in 2023, does not set forth any allegations suggesting an exception to the standard two-year statute of limitations for Title IX and Section 1983 claims. Accordingly, this Court should dismiss both the first and second causes of action against the Board as untimely.

### C. The Complaint's Operative Facts Fail to State a Claim Under Title IX.

Plaintiffs recite various Title IX theories of recovery, but all fail for lack of operative facts suggesting either: (1) actual notice followed by deliberate indifference causing harm or deprivation; or (2) a policy of deliberate indifference creating a known or obvious heightened risk of harm.

#### 1. *Plaintiffs do not plead actual notice or causation as required for a deliberate indifference or hostile environment claim under Title IX.*

Plaintiffs cannot succeed on standard Title IX theories of deliberate indifference or hostile environment, because they do not allege the District had actual notice of their harassment while they were enrolled. Title IX prohibits sex-based discrimination, including sexual harassment, in educational institutions. 20 U.S.C.1681(A); *Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S. Ct. 1989, 1999 (1998).* In recent years, certain courts differentiated between deliberate indifference and hostile environment theories of recovery, despite largely overlapping elements. *See, e.g. Doe v. Univ. of Ky.*, 959 F.3d 246, 251 n.3 (6th Cir. 2020).

To state a deliberate indifference claim for teacher-student harassment, a plaintiff must allege:(1) sexual harassment by a teacher; (2) that an official with authority to take corrective action had actual notice of that harassment: (3) the school's response was clearly unreasonable; and (4) the school's deliberate indifference caused plaintiff to suffer discrimination. *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022). The last causation element is satisfied either by: (1) allegations of further harassment; or (2) operative facts showing that plaintiff's objectively reasonable fear caused her to take specific actions to avoid that harassment, depriving plaintiff of educational opportunities.  *Id*.

Similarly, to state a hostile environment claim, plaintiff must plausibly allege: (1) she was subjected to a sexually hostile environment; (2) she provided actual notice of the situation to an appropriate person, who was an official of the educational entity with authority to take corrective action; and (3) the institution's response to the harassment amounted to deliberate indifference. *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001);  *Doe v. Ohio Univ.*, No. 2:21-cv-858, 2022 U.S. Dist. LEXIS 54992, at *19 (S.D. Ohio Mar. 28, 2022).

Here, the operative facts aver that only Plaintiff 1 complained about her harassment, and that was several years after her 2013 graduation. Specifically, Jane Doe 1 alleges she left an anonymous message in 2015 and followed up in person in 2018. (Comp. ¶¶ 38,49-52 PageID 6, 8.) Neither of the two other Plaintiffs ever notified the District that Kline harassed them according to the Complaint. Because Plaintiffs do not allege actual notice during the years they attended, the District could not possibly have addressed their harassment in a way that caused discrimination and a loss of educational opportunities.  In other words, the operative facts fail to allege the basic elements of actual notice, causation, or deliberate indifference. Plaintiffs' allegations do not permit them to pursue standard theories of recovery under Title IX.

### 2. *Plaintiffs do not plead operative facts showing an appropriate official had actual knowledge of Kline's misconduct towards others.*

Plaintiffs also cannot pursue Title IX claims based on allegations of actual notice that Kline harassed others. Certain courts have allowed plaintiffs to move forward when a complaint avers actual notice of a teacher's past abuse of other students. *See e.g.*, *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S. Dist. LEXIS 202813, at \*12 (S.D. Ohio Nov. 22, 2019); *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 996 (S.D. Ohio 2018). But actual notice means disclosing abuse to an appropriate person, an official with authority to take corrective action to end discrimination. *Gebser*, 524 U.S. 274 at 290. The *Herman* plaintiff, for example, alleged three previous official university investigations of her professor's sexual harassment towards other students. *Herman*, 2019 U.S. Dist. LEXIS 202813, at \*11. Similarly, the *Adams* plaintiff alleged multiple previous official reports filed against the professor who harassed her, along with course evaluations referencing sexual misconduct. *Adams*, 300 F. Supp. 3d 983, 996.

In contrast, courts in the Sixth Circuit dismiss Title IX claims predicated only on notice to school employees who lack authority to take direct and corrective action. *See e.g.* *Joyce v. Wright State Univ.*, No. 3:17-cv-387, 2018 U.S. Dist. LEXIS 100780, at \*26 (S.D. Ohio June 15, 2018) (notice to campus police officer insufficient as he lacks authority to end discrimination on campus); *Doe v. Ohio State Univ.*, 323 F. Supp. 3d 962, 968 (S.D. Ohio 2018); *Gischel v. Univ. of Cincinnati,* No. 1:17-cv-475, 2018 U.S. Dist. LEXIS 230848, at \*19 (S.D. Ohio Jan. 23, 2018) (plaintiff cannot state Title IX claim without alleging he reported touching as unwanted); *See also Noble v. Branch Intermediate Sch. Dist.*, No. 4:01cv 58, 2002 U.S. Dist. LEXIS 19600, at \*49 (W.D. Mich. Oct. 9, 2002) (mere authority to report abuse insufficient; thus, paraprofessionals not appropriate officials under Title IX, decided on summary judgment), citing

*Warren v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002)(granting new trial because guidance counselor is not appropriate official under Title IX as a matter of law.)

Moreover, the appropriate official with authority to directly discipline the offender must actually know about the type of harassment that occurred, not merely reports of impropriety. *Campbell v. Dundee Cmty*. Sch., 661 F. App'x 884, 888 (6th Cir. 2016) (inappropriate interactions and odd communications insufficient to show actual notice); *Doe v. Cuyahoga Cty. Cmty. Coll.*, No. 1:22CV1287, 2023 U.S. Dist. LEXIS 35472, at *14 (N.D. Ohio Feb. 10, 2023) (knowledge of employee's previous misconduct at other schools and subsequent criminal charges insufficient.)

Here, Plaintiffs allege two disclosures, both insufficient to show the District had actual knowledge of the sexual harassment they allege later experiencing. **First,** Plaintiffs allege that in 2005, an unidentified student told a guidance counselor Kline used a musical instrument to look up her skirt. (Compl. ¶¶23-25; ECF#1, PageID 5.) The guidance counselor allegedly failed to report this to anyone else at Solon. (*Id.*) While obviously inappropriate, a single incident of glancing up a student's skirt is not comparable to the type of repeated and frequent sexual assaults certain Plaintiffs allege experiencing.  More importantly, under Ohio law, guidance counselors are not principals and do not supervise other teachers. O.A.C.3301-24-01(R) (defining principals as building level supervisors)

Stated differently, even if the guidance counselor knew of Kline's misconduct, she could not discipline or fire him, because she did not supervise Kline. *See Kesterson v. Kent State Univ.,* 967 F.3d 519, 528 (6th Cir. 2020) (employee's ability to mitigate hardship or refer complaints does not make them an appropriate person under Title IX, otherwise every employee would qualify.) Because Plaintiffs specifically aver that the guidance counselor told no one about the unnamed student's disclosure, this incident cannot meet the requisite element of actual knowledge.

**Second,** Plaintiffs allege that, almost a decade later, an unnamed male student told Principal Brownlow that: (1) female students in leggings faced away from Kline; (2) Kline allowed students to change in his office; and (3) there was general discomfort in the band with girls interacting with Kline. (Compl. ¶35, ECF#1, PageID 6.) These specifics, however, would not place a reasonable person on notice of sexual harassment. In other words, this alleged conversation did not – as a matter of law – alert the principal to a risk of the sexual harassment that Plaintiffs allege experiencing. *See Campbell* 661 F. App'x at 888. Further, by 2014, the first and third Plaintiffs already graduated, and the second Plaintiff was no longer in 8th grade, which is the when the single incident she alleges occurred. (Compl. ¶¶ 38, 58-59, 61, ECF#1, PageID 6, 8- 9.) In other words, the alleged groping had long since ended by the time Principal Brownlow heard that Kline's female students faced away from him while playing and changed in his office.

Neither of the two pre-2015 disclosures alerted an appropriate official with supervisory responsibility over Kline that he was sexually assaulting students. Thus, Plaintiffs cannot plead actual notice for any Title IX theory, even based on harassment of others.

### 3. Plaintiffs do not plead operative facts meeting the Karasek test for pre-assault claims.

Finally, Plaintiffs cannot succeed on a pre-assault, heightened-risk Title IX claim, because they do not plausibly allege operative facts showing the District had a policy of deliberate indifference to sexual misconduct reports. The Sixth Circuit permits plaintiffs to move forward on "pre-assault, heightened risk" theories, also known as "before" claims, where the school had a policy of deliberate indifference to sexual misconduct generally. *See Doe v. Metro. Gov't & Davidson Cty., 35 F.4th 459, 465 (6th Cir. 2022)*, citing and adopting the test set forth in *Karasek v. Regents of the Univ. of Cal., 956 F.3d 1093, 1112 (9th Cir. 2020)*. The *Karasek* test allows pre-assault claims to survive dismissal if plaintiff plausibly pleads operative facts suggesting: (1) the

school maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; (4) resulting in harassment that was so severe, pervasive, and objectively offensive as to deprive plaintiff of educational opportunities or benefits. (*Id.*) The *Karasek* court, for example, permitted plaintiffs to move forward on allegations that a State Auditor's Report found that years of Title IX complaints were inadequately resolved, and employees were insufficiently trained. *Karasek,* 956 F.3d at 1113.

In contrast, where plaintiffs do not allege operative facts demonstrating the institution's knowledge of threat to them prior to their assaults, the Sixth Circuit dismisses such claims before discovery. *See e.g. Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 625 (6th Cir. 2019). The *Kollaritsch* Court, for example, dismissed plaintiffs' claims pre-discovery, because the complaint alleged assaults but not the university's knowledge of any risk to plaintiffs before the harm occurred. *Id.* at 623-24; *See also Metro. Gov't & Davidson Cty.*, 35 F.4th at 464 ("In *Kollaritsch*, Michigan State University had no knowledge of any threat to the four female students prior to the assaults against them.")

As in *Kollaritsch*, Plaintiffs' claims must fail and for the same reason: No operative facts suggest that the District had actual knowledge that Kline posed a sexual assault threat to Plaintiffs. Again, the single pre-assault incident Plaintiffs allege involved an unidentified student who – in 2005 – told a guidance counselor that Kline used a musical instrument to look up her skirt. (Compl. ¶¶ 23-25; ECF#1, PageID 5.) Plaintiffs explicitly allege that this guidance counselor did not report this disclosure to anyone or address it otherwise. (*Id.*) Thus, based on the Complaint's own allegations, there was no way for the District to know about any misconduct on Kline's part, much less a risk of sexual assault.

Likewise, under the *Karasek* test, Plaintiffs cannot establish the very first prong: a policy of deliberate indifference to sexual misconduct reports. The Complaint does not allege a single sexual misconduct report to an appropriate official with disciplinary authority over Kline at any time before Plaintiffs' assaults. Thus, Plaintiffs also do not plausibly plead that any purported deliberate indifference caused their harm, as required for the fourth prong.

In short, Plaintiffs' Title IX claims cannot go forward under any cognizable theory. Any other outcome, particularly one allowing liability against the Board for a guidance counselor's failure to report almost 20 years ago, would violate the Supreme Court's admonition against vicarious liability. *See Gebser*, 524 U.S. 274 at 288. Plaintiffs simply do not plead operative facts suggesting any official with authority to discipline Kline knew about the risk he posed before the assaults Plaintiffs allege. Thus, the District is entitled to judgment on the pleadings in its favor on the Title IX claim in the first cause of action.

### D. The Complaint's Operative Facts Do Not Support a Section 1983 Claim Against the Board.

The operative facts here – while certainly distressing – do not support Board liability under Section 1983. A governmental entity cannot be liable for constitutional violations based on nothing more than the misconduct of subordinates. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). Instead, a successful plaintiff must show that the government entity itself is the wrongdoer. *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996).

Ultimately, liability under Section 1983 cannot be established unless the challenged misconduct occurs pursuant to a municipality's official policy or custom. *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014). To avoid dismissal, a plaintiff must plausibly plead operative facts showing: (1) an illegal official policy; (2) that an official with final decision-making authority ratified illegal actions; (3) a policy of inadequate training or supervision; or (4) a custom of

inaction, tolerance, or acquiescence to federal rights violations. *Id*. Plaintiffs do not allege an official policy permitting sexual harassment by teachers. And, although the Complaint references ratification, failure to train, and a custom of tolerance or inaction, Plaintiffs do not support their legal conclusions and recitations with plausible operative facts.

### 1. Plaintiffs do not allege operative facts showing an official with final decision-making authority ratified illegal actions.

Plaintiffs do not allege operative facts showing that any Board member knew about – much less ratified – Kline's misconduct. Liability can attach only where an official with final policymaking authority deliberately chooses a course of action causing plaintiff's harm. *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988). Moreover, state law determines whether an individual has final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300 (1986). Further, authority to exercise discretion equates to policy-making authority only when the official's decisions are final and unreviewable. *M.J. v. Akron City Sch. Dist. Bd. of Educ*.,2020 U.S. Dist. LEXIS 74270, at *47 (N.D. Ohio Apr. 28, 2020) Notably, under Ohio law, only school board members have final authority for all employment-related decisions. O.R.C. § 3319.11.

Thus, Ohio's federal courts routinely dismiss Section 1983 claims where plaintiffs fail to allege operative facts showing a school board member ratified or approved unconstitutional conduct. *Myers v. Boardman Local Sch. Dist. Bd. of Educ*., No. 4:21-cv-2048, 2022 U.S. Dist. LEXIS 213917, at *13 (N.D. Ohio Nov. 28, 2022) (allegations that teacher knew about her aide's misconduct insufficient to constitute notice to Board) ; *Mohat v. Mentor Exempted Vill. Sch. Dist. Bd. of Educ*., No. 1:09 CV 688, 2011 U.S. Dist. LEXIS 58319, at *22 (N.D. Ohio May 31, 2011) (allegations that teacher knew about bullying insufficient to constitute notice to the Board.)

Moreover, simply alleging ratification alone is not enough: The successful plaintiff must also plead operative facts showing that the ratification was the moving force behind his injury. *McPherson v. Cuyahoga Cty.*, 2021 U.S. Dist. LEXIS 126802, at *25 (N.D. Ohio July 8, 2021) Thus, failure to investigate or discipline can constitute actionable ratification only if plaintiff alleges operative facts showing that that a pattern of previously inadequate responses caused the constitutional harm. *Runser v. City of Dayton*, No. 3:21-cv-00160, 2022 U.S. Dist. LEXIS 32263, at *10 (S.D. Ohio Feb. 24, 2022); *Evans v. Iceman*, No. 2:21-cv-05213, 2022 U.S. Dist. LEXIS 133151, at *12 (S.D. Ohio July 26, 2022).

Here, Plaintiffs do not aver a final decision-maker who knew about Kline's sexual harassment but disregarded it or ratified such indifference. Likewise, Plaintiffs do not plead operative facts suggesting a pattern of previously-inadequate investigations causing the harassment they allege. Instead, Plaintiffs aver a single pre-assault incident where a guidance counselor failed to report an unnamed student's disclosure that Kline used a musical instrument to look up her skirt. (Compl. ¶¶ 23-25; ECF#1, PageID 5.) Thus, Plaintiffs' own allegations foreclose any possibility that a Board member knew about this 2005 incident, much less ratified the counselor's decision. Plaintiffs likewise do not allege operative facts suggesting the Board routinely conducted shoddy investigations or failed to discipline sexual harassers. In fact, the Complaint explicitly avers that the year Plaintiff 1 came forward in person is the year Kline's employment ended with the District. (*Id.*, ¶69 ECF#1, PageID 10.) Thus, Plaintiffs do not allege Section 1983 liability via ratification by a final decision maker.

### 2. Plaintiffs do not allege operative facts showing either a policy of inadequate training or a custom of inaction.

Likewise, Plaintiffs cannot move forward on failure-to-train or inaction theories under Section 1983. To plead failure-to-train, plaintiffs must allege prior unconstitutional conduct

showing the Board: (1) ignored a history of abuse; and (2) was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Myers*, 2022 U.S. Dist. LEXIS 213917, at *14, citing *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010).

Similarly, to plead inaction or a custom of tolerance to federal violations, plaintiffs must allege: (1) a clear and persistent pattern of misconduct; (2) notice or constructive notice to the Board; (3) the Board's tacit approval of the unconstitutional misconduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the Board's custom of inaction was the moving force or causal link in the constitutional deprivation. *D'Ambrosio*, 747 F.3d at 387; *Myers*, 2022 U.S. Dist. LEXIS 213917, at *15. Where the Board has no knowledge of the alleged misconduct, a Section 1983 claim will fail as a matter of law because "the Board cannot have been deliberately indifferent to employee misconduct of which it had no knowledge." (*Id.*)

Notably, when plaintiffs allege that the misconduct they aver was deliberately hidden or unreported, it is unreasonable to infer any notice, whether constructive or actual. *KD v. Douglas Cty. Sch. Dist.*, No. 8:17CV285, 2019 U.S. Dist. LEXIS 190377, at *25 (D. Neb. Nov. 1, 2019) (dismissing both 1983 and Title IX claims, in part because complaint alleged that student hid teacher's sexual abuse); *Benefield v. Bd. of Trs. of the Univ. of Ala. at Birmingham*, 214 F. Supp. 2d 1212, 1219 (N.D. Ala. 2002) (dismissing Title IX claims in part because plaintiff's concealment negated any inference that the school had notice of sexual misconduct).

Here, Plaintiffs' allegations fail to plead both failure-to-train and inaction. The Complaint does not allege any circumstances that did – or should have – alerted the Board to Kline's sexual harassment prior to the groping Plaintiffs allege. For example, they do not claim that the Board knew about Kline's misconduct from federal investigations or complaints from members of the

public. Instead, prior to their own harassment allegations, Plaintiffs aver only that a guidance counselor failed to report an unnamed student's recounting of Kline trying to glance up her skirt. (Compl. ¶¶ 23-25; ECF#1, PageID 5.) No operative facts suggest any Board member knew about this incident or the counselor's failure to report. Moreover,  it is unreasonable to infer notice to the Board when the Complaint itself indicates a failure to report to anyone.

Plaintiffs also allege that – almost ten years later – an unnamed individual told Principal Brownlow that female students face away from Kline and may change in his office. (Compl. ¶35, ECF#1, PageID 6.) This allegation likewise cannot state a failure-to-train or inaction claim for three reasons: **First,** Principal Brownlow was an administrator, not a Board member, and nothing suggests she related this exchange to a final decision-maker. **Second,** sharing irregularities in a teacher's behavior does not place anyone, much less the Board, on notice of a risk of sexual assault by that teacher. **Finally,** this exchange took place, according to the Complaint's own allegations, long after Plaintiffs' harassment ended. In fact, the first and third Plaintiffs had already graduated, and the second Plaintiff was no longer in 8th grade, which is the when the single incident she alleges occurred. (Compl. ¶¶ 38, 58-59, 61 ECF#1, PageID 6, 8- 9.) Likewise, the anonymous 2015 tipline report occurred long after the alleged groping ended, by the Complaint's own recounting. (Compl. ¶¶ 49-50, ECF#1, PageID 8.)  Thus – as a matter of law and chronology – neither the exchange with Principal Brownlow nor the 2015 anonymous call could have been the moving force or causal link in Plaintiffs' harm.

In sum, the Complaint's operative facts do not show the Board had any reason to know about Kline's misconduct before Plaintiffs' alleged injuries. Thus, the Board cannot be liable for Plaintiffs' harm and is entitled to judgment on the pleadings in its favor on Count Two as well.

### E. The Third and Fourth Causes of Action Against the Administrators Should Be Dismissed.

#### 1. *Ohio does not recognize a cause of action for malice, bad faith, and wanton or reckless conduct.*

Counts Three and Four purport to state a claim that is unrecognized under Ohio jurisprudence. Specifically, malice, bad faith, wanton conduct, and recklessness reflect different levels of intent, not types of torts. *Bickerstaff v. Lucarelli*, No. 1:14CV831, 2015 U.S. Dist. LEXIS 43603, at *12 (N.D. Ohio Apr. 2, 2015); *Bradley v. City of Cleveland*, No. 1:11CV781, 2012 U.S. Dist. LEXIS 30714, at *9 (N.D. Ohio Mar. 7, 2012).  Although intent can be an element of a cause of action, it does not – by itself – establish an independent claim in Ohio. *Id*., *Kiekisz v. Cuyahoga Cty. Bd. of Comm'rs*, No. 1:21-cv-00264, 2021 U.S. Dist. LEXIS 215979, at *28 (N.D. Ohio Nov. 9, 2021). Because Ohio does not recognize a tort for malice, bad faith, or recklessness, this Court can dismiss the third and fourth causes of actions on that basis alone.

#### 2. *Both Administrators retain their immunity under R.C.§ 2744.03*

To the extent that this Court construes the third and fourth causes of action as an attempt to pierce Brownlow and Short's statutory immunity, the Complaint's operative facts compel the opposite conclusion. Individual school officials are immune from torts and personal injury claims unless: (1) their acts or omissions fell manifestly outside the scope of their responsibilities; (2) they acted with malicious purpose, bad faith, or in a wanton or reckless manner; or (3) civil liability is expressly imposed by another Revised Code provision. O.R.C.§ 2744.03(A)(6).

Wantonness, under Ohio law, is failure to exercise any care despite a great probability of harm. *Anderson v. City of Massillon*, 2012-Ohio-5711, ¶ 33, 134 Ohio St. 3d 380, 388, 983 N.E.2d 266, 273 Similarly, recklessness is a conscious disregard of a known or obvious risk of harm. *Id*. Malice likewise requires a showing of hatred, ill will, a spirit of revenge or a conscious disregard

that has a great probability of causing substantial harm. *Preston v. Murty*, 32 Ohio St. 3d 334, 335, 512 N.E.2d 1174, 1175 (1987). Foreseeability, in other words, is a mandatory prerequisite to piercing individual political subdivision employees' immunity. *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 359 (6th Cir. 2014) ("The question of recklessness turns on whether Defendants knew of and could foresee harm to a student and whether they took actions in response to the harassment.") Stated differently, an exception to immunity exists only where operative facts show that defendants disregarded a predictable risk of serious harm to plaintiffs, which subsequently led to that harm.

Here, the Complaint's operative facts do not allege any risk of harm disregarded by Brownlow or Short that subsequently resulted in Plaintiffs' injuries. The allegations against Brownlow are only that – following the 2014 report from an unnamed student – she did not investigate whether Kline: (1) allowed girls to change in his office; (2) asked them to face away from him when doing playing tests; or (3) created general discomfort in the band. (Compl. ¶35, ECF#1, PageID 6.) These operative facts cannot pierce Brownlow's immunity under R.C. §2744.03 for two reasons: **First,** these alleged statements indicate possible irregularities on Kline's part – not a predictable risk of substantial or obvious harm. Plaintiffs allege they were injured by Kline's sexual assaults, not his permission to change in an office or having to face away from him during tests. Nothing in this Complaint suggests that Brownlow knew or should have known about a risk that Kline would sexually harass or assault anyone. **Second,** the exchange with Brownlow purportedly happened in 2014, during a conversation about the 2014 Ohio State Band scandal. (*Id.*, ¶ 32, ECF#1, PageID 6) This is long after the groping Plaintiffs describe experiencing. By the start of the 2013-2014 school year, Plaintiffs One and Three already graduated and Plaintiff Two was long past eight grade, which is when the single incident she alleges occurred. (*Id.,* ¶¶ 38, 58-

59, 61 ECF#1, PageID 6, 8- 9.) Chronologically, there is no way for Brownlow's response to a 2014 conversation to cause Plaintiffs' pre-2013 injuries.

The allegations against Short fail for the same reasons. Plaintiffs allege that Short: (1) allowed students to wander the halls; and (2) did not investigate an anonymous 2015 tip. (Compl. ¶¶48, 50, ECF#1, PageID 7-8.) Neither of these indicate a serious risk of harm to Plaintiffs that subsequently materialized.  It almost goes without saying that failure to investigate an anonymous tip in 2015 cannot cause pre-2013 injuries. In short, this Complaint cannot plausibly allege operative facts piercing immunity, because it does not show that Brownlow and Short could have foreseen Plaintiffs' harm, much less prevented it. Further, malice, recklessness, and bad faith do not state a separate cause of action recognized in Ohio. Thus, judgment on the pleadings should be granted to Administrators on the third and fourth causes of action.

## IV.    CONCLUSION

Formulaic recitations and conclusory labels cannot suffice to avoid dismissal.  Plaintiffs do not allege operative facts supporting their Title IX, Section 1983, or state law claims.  For these and other reasons articulated above, Defendants ask this Court to grant judgment on the pleadings in their favor on all causes of actions in this Complaint.

Respectfully Submitted.

*/s/ Kathryn Perrico*
Kathryn I. Perrico (Reg. No. 0076565)
   E-mail:  kperrico@westonhurd.com
   Direct Dial: 216-687-3374
Maria Fair (Reg. No. 0087745)
   Email: mfair@westonhurd.com
   Direct Dial: 216-687-3366
Sara Ravas Cooper (Reg. No. 0076543)
   Email: scooper@westonhurd.com
   Direct Dial: 216-687-3364
**WESTON HURD LLP**
1300 East Ninth Street, Suite 1400
Cleveland, Ohio 44114
216-241-6602 / Fax: 216-621-8369
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the track for this case is unassigned and, therefore, is subject to the 20-page limitation set forth in L.R. 7.1(f).  Accordingly, *Defendants' Motion for Judgment on the Pleadings* complies with that page limitation.

        */s/ Kathryn Perrico*
        *One of the Attorneys for Defendants*

## CERTIFICATE OF SERVICE

A copy of the foregoing *Defendants' Motion for Judgment on the Pleadings* has been filed this 21st day of December 2023, through the Court's electronic filing system.  All parties may access the foregoing via the Court's electronic filing system.

        */s/ Kathryn Perrico*
        *One of the Attorneys for Defendants*